DISTRICT OF OREGON, ss:         AFFIDAVIT OF TAPARA SIMMONS, JR.

## Affidavit in Support of a Criminal Complaint and Arrest Warrant

I, TaPara Simmons, Jr, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.      I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been since February 2023. I am currently assigned to the FBI Portland Field Office (PD) Violent Crimes Against Children (VCAC) and Violent Incident Crime – Domestic (VIC-D), where I investigate violations of federal law, including but not limited to bank robberies, crimes against children, and other violent crimes. As a Special Agent with the FBI, I received extensive training in law enforcement techniques and in conducting these types of investigations. I am trained in investigating a wide variety of violations of federal criminal law having received over 800 hours of training at the FBI Academy. As a federal agent, I am authorized to investigate violations of laws of the United States, and as a law enforcement officer, I am authorized to execute warrants issued under the authority of the United States. Prior to joining the FBI, since March 2019, I was a sworn federal law enforcement officer for the United States Secret Service in Washington, DC.

2.      This affidavit is submitted in support of a criminal complaint and arrest warrant charging JOSEPH DAVID EMERSON with Interference with Flight Crew Members and Attendants in violation of 49 U.S.C. § 46504.  As set forth below, I have probable cause to believe that EMERSON committed that crime.

3.      This affidavit is intended to show only that there is sufficient probable cause for the requested complaint and arrest warrant and does not set forth all my knowledge about this matter.  The facts set forth in this affidavit are based on my own personal knowledge, knowledge

Affidavit of TaPara Simmons, Jr.                                                                                            Page 1

obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

### Applicable Law

4.  Title 49 U.S.C. § 46504 provides that an individual on an aircraft in the special aircraft jurisdiction of the United States, who, by assaulting or intimidating a flight crew member or flight attendant of an aircraft, interferes with the performance of the duties of the member or attendant to perform those duties, or attempts or conspires to do such an act, shall be fined under Title 18, imprisoned for not more than 20 years, or both. "Special aircraft jurisdiction" requires that the offense occur while the aircraft is "in flight," as defined in 49 U.S.C. § 46501(1).

### Statement of Probable Cause

5.  On Sunday, October 22, 2023, at approximately 6:11 PM, Port of Portland police officers responded to a report of an inbound aircraft, Horizon Airlines Flight number 2059, tail number N660QX, flying to Portland International Airport due to an inflight disturbance. The initial reporting from police dispatch was that an off-duty pilot named JOSEPH DAVID EMERSON (hereafter referred to as "EMERSON") sitting in the cockpit jump seat of the aircraft attempted to shut the engines down during the flight.

6.  Responding police units interviewed the two pilots. Pilot 1 was flying the aircraft and said that prior to this evening, he had never met EMERSON. During the initial stages of the flight, Pilot 1 said there was zero indication of anything wrong, and EMERSON engaged both pilots in casual conversation about types of aircraft. Pilot 1 advised that the incident occurred

approximately halfway between Astoria, Oregon and Portland, Oregon while the aircraft headed south. While sitting in the cockpit jump seat, EMERSON, said "I'm not okay." Pilot 2 turned and observed EMERSON reaching up and grabbing the red fire handles and pulling them down. Pilot 1 explained to the interviewing police officer that, by pulling the red fire handles, this effectively activated the aircraft fire suppression system used to extinguish aircraft engine fires. Pilot 1 added that the activation of the fire suppression system would shut off the fuel supply to the engines. Pilot 1 grabbed EMERSON's wrist while Pilot 2 declared an inflight emergency. Pilot 1 said EMERSON initially resisted him. They physically engaged for a duration he estimated to be 25-30 seconds, and then EMERSON quickly settled down. Pilot 1 asked EMERSON to leave the cockpit, and EMERSON exited the cockpit. Pilot 1 estimated that from the time EMERSON told the pilots he was not okay until EMERSON exited the cockpit was approximately 90 seconds.

      7.      Pilot 2 advised that, at the beginning of the flight, EMERSON engaged in casual conversation with them about the weather. EMERSON told the pilots that he (EMERSON) had been working for the airline for 10 years. Then, during the flight, Pilot 2 observed EMERSON throw his headset across the cockpit and announce, "I am not okay." Pilot 2 observed EMERSON grab both red engine shutoff handles. Pilot 2 advised that EMERSON had to be "wrestled"[1] with for a few seconds before EMERSON stopped what he was doing. Pilot 2 declared an inflight emergency, turned the autopilot off, and changed the aircraft's course to fly to Portland. Once EMERSON exited the cockpit, the pilots secured the cockpit door. Pilot 2 advised the interviewing police officer that EMERSON was unable to pull the red handles down

---

[1] Since the submission of the original Complaint affidavit, this agent has had the opportunity to review body-worn camera footage of witness interviews. The following facts are consistent with the footage viewed by this agent.

**Affidavit of TaPara Simmons, Jr.**                                                              **Page 3**

all the way and fully activate the engine shutoff due to the pilots "wrestling with" EMERSON. If EMERSON had successfully pulled the red engine shutoff handles down all the way, then it would have shut down the hydraulics and the fuel to the engines, turning the aircraft into a glider within seconds.  Pilot 2 stated that EMERSON's actions interfered with their ability to operate the aircraft.

8.      Responding officers interviewed several flight attendants. During the flight, the flight attendants received a call from the cockpit that EMERSON was "losing it" and he needed to get out of the cockpit. EMERSON was observed peacefully walking to the back of the aircraft. EMERSON told one flight attendant that he "just got kicked out of the flight deck." EMERSON said to a flight attendant, "I need you to cuff me before I do something wrong, it's going to be bad." The flight attendants sat EMERSON in a flight attendant seat in the back of the aircraft and placed cuffs on EMERSON's wrists. During the flight's descent, EMERSON turned towards an emergency exit door and tried to grab the handle. A flight attendant stopped EMERSON by placing her hands on top of EMERSON's hands. The flight attendant engaged EMERSON in conversation in an attempt to distract him from trying to grab the emergency exit handle again. Another flight attendant observed EMERSON make statements such as, "I messed everything up" and that "he tried to kill everybody." The flight attendant noticed EMERSON take out his cellular phone and appeared to be texting on the phone.

9.      Responding police officers learned that EMERSON was seated in a flight attendant seat in the back of the aircraft. EMERSON had a pair of flex handcuffs around his hands in front and he was also secured by a seat harness. Officers detained EMERSON and placed him in a patrol vehicle. Officers read EMERSON his Miranda Rights and EMERSON

agreed to speak with officers. EMERSON's police interview was recorded. EMERSON advised that he was "mentally am in crisis" and had not slept for approximately 48 hours. EMERSON said he was an employee of Alaska Airlines and had been a pilot since 2001. EMERSON said he felt dehydrated and tired. EMERSON confirmed that he sat in the cockpit during the flight. EMERSON said, "I didn't feel okay. It seemed like the pilots weren't paying attention to what was going on. They didn't…it didn't seem right." EMERSON also said, "Yah…I pulled both emergency shut off handles because I thought I was dreaming and I just wanna wake up." EMERSON denied taking any medication. When asked about whether he became depressed before or after his friend died, EMERSON responded, "my friend died like six years ago… I think." The officer and EMERSON talked about the use of psychedelic mushrooms and EMERSON said it was his first-time taking mushrooms. EMERSON told a police officer, "I put 84 peoples' lives at risk, today, including my own."

10. EMERSON was brought to the Port of Portland police department. While in custody and in front of officers, EMERSON asked if he could waive his right to an attorney. EMERSON said, "I'm admitting to what I did. I'm not fighting any charges you want to bring against me, guys."

11. Port of Portland police officers inspected the cockpit and noted the proximity of the cockpit jump seat to the emergency shut off handles. Officers noted that the handles were clearly painted red and had "EXTG" printed on them.

/ / /

/ / /

/ / /

**Conclusion**

12. Based on the foregoing, I submit there is probable cause to believe that JOSEPH DAVID EMERSON committed several violations of Title 49, United States Code, Section 46504, and request issuance of a warrant.

13. Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Parakram Singh. AUSA Singh advised me that in his opinion, the affidavit is legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*/s/ TaPara Simmons, Jr., by telephone*
TAPARA SIMMONS, JR.
Special Agent, FBI

Subscribed and sworn to by telephone in accordance with the requirements of Fed. R. Crim. P. 4.1 at __9:53__ a.m./~~p.m.~~ on October __26__, 2023.

*Youlee Yim You*
HONORABLE YOULEE Y. YOU
United States Magistrate Judge
